(9 Misc. Rep. 515.)

PERRY et al. v. LEHIGH VAL. RY. CO.

(Supreme Court, Special Term, Genesee County. August 6, 1894.)

RAILROAD COMPANIES—RIGHT OF WAY—INCREASED TRAFFIC.

Where the sole condition in a conveyance of a right of way to a railroad company is the establishment of an undercrossing on the grantor's land, no action lies for damages caused by the construction of a station and switch near such crossing, whereby the traffic at that point is largely increased.

Action by Frank D. Perry and Jennie E. Perry against the Lehigh Valley Railway Company to recover damages for defendant's use of its right of way. Defendant demurred to the complaint on the ground that it did not state a cause of action. Sustained.

Myron H. Peck, Jr., for plaintiffs.
Herbert P. Bissell, for defendant.

WARD, J. The complaint in this action alleges the due incorporation of the Buffalo & Geneva Railway Company in February, 1889, for the purpose of constructing a railroad from the village of Geneva, in the county of Ontario, to the city of Buffalo and Suspension Bridge. That the said railroad passed through the county of Genesee. That a survey had been made of the route of the proposed road, and a map, survey, and profile thereof were duly filed, and the $10,000 for every mile of the proposed road were, in good faith, subscribed to the capital stock of the company, and 10 per cent. thereon paid in. That the plaintiffs were the owners of about 150 acres of land situated in the town of Batavia, Genesee county, and used for agricultural purposes, and about two miles from Batavia, having a large and expensive dwelling house and suitable farm buildings thereon, and of great value. That the line of the said railroad passed through said farm in an easterly and westerly direction; leaving 50 acres, with the buildings, upon one side of the railroad route, and 100 acres on the other side. "That at the

request of the said company, and for the purposes of the said railroad, these plaintiffs did, on or about the 20th of March, 1890, convey by warranty deed to said company a right of way through the said farm of the plaintiffs, in which the name of the grantee was stated to be Buffalo & Geneva Railway Company, a railroad corporation, and in which deed was contained the following covenant or condition, immediately following the description of the said right of way so conveyed: 'The party of the second part hereto agrees to make and maintain an undercrossing at the present lane line on said premises, with flare wings at least fourteen feet wide, eleven and one-half feet high in the clear, without changing the established grade of the railway, and the same to be paved for sixteen feet from the rails.' And that such deed, with the said condition and provision for an undercrossing, was the result of a compromise agreement between the plaintiffs in this action and the said Buffalo & Geneva Railway Company, by which the said right of way was acquired by said company for a much less sum than it could otherwise have been obtained." The complaint further alleges that on the 21st day of June, 1890, the said railway company was consolidated, with the Geneva & Van Ettenville Railway Company and Lehigh Valley Company, into one corporation, called the Lehigh Valley Railway Company (this defendant), and thereby the defendant became fully vested with all the property and franchises of the several railroad companies, together with the rights of way acquired by them, and that the defendant thereafter constructed and completed the railroad for which the Buffalo & Geneva Railroad Company was incorporated to construct, and at the commencement of this action was engaged in operating the said railroad; that in the month of July, 1892, the defendant constructed a branch railroad from the north side of the Canandaigua branch of the New York Central & Hudson River Railroad, thence easterly, ascending a steep grade, to the tracks of the defendant, on the right of way obtained from the plaintiffs, and connecting with such tracks at a point about 25 feet westerly from the plaintiffs' undercrossing, for the purpose of transferring freight and passenger trains from the defendant's railroad to the Central, and furnishing a connection with defendant's road with other railroads, and that the defendant established a station just east of the said crossing, and switches on each side of the defendant's main track, just east of said crossing, for the purpose of transferring cars from the main line of defendant's road to said switches, and then to other trains and other points beyond, and the freight and passenger trains are run over said branch to and from the main track of the defendant's railway, and over the said undercrossing; that, at the time said deed was given, it was intended by the parties that such crossing was to be used as free as possible from obstructions from passing trains; that there was no necessity for the location of the depot and switches and railroad connections at the place where they were located, but they could have been located elsewhere as well; and that they were so constructed with full knowledge of such intention by the defendant. The complaint further alleges that by reason of the construction

of such branch tracks, and running of passenger and other trains thereon, transferring and switching said cars over said undercrossing, the same is rendered of much less value than otherwise it would have been, had it remained as contemplated by the parties; that in the operation of the railroad by the defendant, as at present operated, the engines and cars are caused to stand at, near, and upon the said undercrossing, in the shifting of the same to and upon the said switches, and to and upon said branch tracks, and to approach the said undercrossing from the west with great noise and confusion, and the emission of smoke and fire from the engines in ascending the said grade, and to stop at said station for orders, and thereby to stand upon and near the said undercrossing, hindering and delaying the plaintiffs in passing to and fro upon their said farm, and underneath the said crossing; that by reason of the said facts the plaintiffs have sustained damage in the sum of $7,500, for which they demand a judgment.

There is no allegation in the complaint but that the undercrossing was constructed and had been maintained by the defendant precisely as covenanted in the plaintiffs' deed. This is a plain legal action for damages. No equitable relief is asked. The substance of the plaintiffs' grievance is that when the right of way was granted, and before the construction of the railroad, it was not in the contemplation of the parties that a branch track would be constructed, and depot and switches erected, within a short distance of the expected crossing, so that the crossing might be more exposed to the annoyance, noise, smoke, and fire attendant upon such construction, and the switching, operating, and moving engines and cars thereat; that while the defendant had the right thus to do, as a part of its railroad business, it was not necessary to do it at that particular point, but that point was selected at the mere convenience of the defendant, and it should have selected some other point on its railroad, that would not have disturbed the plaintiffs in the enjoyment of their crossing. The question now is whether the plaintiffs can maintain this action for damages, assuming all these allegations to be true, which must be done, in the disposition of this demurrer.

By section 66 of the general railroad act, the defendant is entitled:

"To take and hold such voluntary grants of real estate and other properties as shall be made to it to aid in the construction, maintenance and accommodation of its railroad. * * * To purchase, hold and use all such real estate and other property as may be necessary for the construction and maintenance of its railroad, and the stations and other accommodations necessary to accomplish the objects of its incorporation." "To intersect, join and unite its railroad with any other railroad before constructed at any point on its route and upon the ground of such other railroad company, with the necessary turnouts, sidings and switches and other conveniences in furtherance of the objects of its connection."

The powers here enumerated are absolutely necessary for railroads to possess, in carrying out the purposes of their incorporation. The law has defined the use to which the defendant could put the real estate granted by the plaintiffs to it, and, as there was no limita-

tion in the deed upon the exercise of these statutory powers by the defendant, with reference to the estate conveyed, none is to be presumed or implied; and, in legal effect, it was the understanding of the parties that the defendant might construct depots, switches, railroad connections, sidings, or do any other act they were authorized to do, on any part of their railroad, upon the premises conveyed. The only obligation imposed upon the defendant was to create and maintain the undercrossing specified in the deed. There was no limitation upon the use of the land above the crossing, or contiguous to it; and, as long as the defendant made only such use of it as the statute permits, there is no breach of the covenant in the deed, nor is it liable for damages. It is conceded that the undercrossing was fully maintained, so that the plaintiffs could pass and repass from one portion of their farm to the other without interference or hindrance. The complaint is that, in the ordinary operations of the defendant at that point, the passage at all times was not free from difficulty, on account of the presence overhead of the defendant's cars and engines, and the noise and other disturbances caused thereby. But the grant was before the railroad was in fact constructed, the extent of its traffic ascertained, its future necessities understood, or what particular use, aside from the mere passage of trains over the contemplated railroad, was to be made of any portion of the road; and therefore it cannot be said, in reason, that any particular use of the track was not in the contemplation of the parties at that time. To attempt to limit the effect of this conveyance by vague understandings or impressions, such as are alleged in the complaint, would be impossible and absurd.

The complaint recites that this conveyance was for a valuable consideration. The consideration received by a landowner, in conveying a right of way to a railroad company, is presumed to be in payment of all damages which may result to the grantor by reason of the use of the premises conveyed for the purposes of a railroad, the same as though damages had been assessed under the condemnation act, or special proceedings for that purpose. Damages, once fixed, either by agreement of the parties or by special proceedings, cover all future damages or claims therefor; that is to say, new damages cannot be recovered at each change of management or of increase of trains, or increased use of the premises conveyed, provided such use does not exceed the legitimate use of such property for railroad purposes, nor can future damages be predicated upon inconveniences and annoyances, as the overlooking of the premises and obstruction of views, increased competition resulting from the railroad, a larger number of residents or visitors attracted to the locality by means of it, and interfering with the owner's privacy, nor inconveniences not involving any immediate physical injury, such as smoke, vibrations, and noise caused by passing trains. Pierce, R. R. pp. 216, 217, and cases there cited. And see, as bearing upon the questions here considered, Mills, Em. Dom. §§ 110, 216; Lewis, Em. Dom. § 565; Dearborn v. Railroad Co., 24 N. H. 179, 186; Hollins v. Demorest, 129 N. Y. 676, 29 N. E. 1093. And

among elements of damage to be regarded, when damages are as-
sessed or agreed upon, is that of crossing from one part of the
divided premises to the other, and the interruption of facilities and
communications of business attached to the estate. Pierce, R. R.
p. 216, and cases there cited. The demurrer must be sustained,
with costs, with leave to the plaintiffs to serve an amended com-
plaint, if they shall be so advised, upon payment of such costs, and
within 20 days after the service upon them of the order sustaining
the demurrer, and the interlocutory judgment thereon.